Stein *v.* New York Life Insurance Company,
Appellant.

Argued May 15, 1935. Before SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Arthur G. Dickson,* for appellant.

*Frank Fogel,* for appellee.

OPINION BY MR. JUSTICE DREW, June 29, 1935:

Plaintiff, Jennie Stein, brought this action as beneficiary of a policy of insurance issued by defendant upon the life of her daughter, Kate Stein. The defense pleaded was that insured had made false and fraudulent answers to questions in her "answers to the medical examiner," which formed a part of the application, a copy of which was attached to the policy. The jury returned a verdict for plaintiff, upon which the trial court entered judgment. After the affirmance of that judgment by the Superior Court (116 Pa. Superior Ct. 109), we allowed an appeal.

The answers alleged to have been falsely and fraudulently made stated that insured had never undergone any surgical operation, had never been under observation or treatment in any hospital, and had never consulted a physician for or suffered any ailment or disease of the middle ear. Defendant produced evidence that at the time the application was made insured had chronic ear trouble and sinusitis and that she had previously suffered from, and had undergone operations for, nasal and mastoid trouble. Plaintiff made no serious effort to contradict this evidence, but sought to escape its effect by showing that the questions with regard to the health of insured were not asked of her by the examining physician nor answered by her, and that the answers were not filled in when insured signed the paper containing these questions. Over defendant's objection, two brothers of insured, whose presence at the medical examination was shown both by their own testimony and by that of the agent who solicited the policy, were permitted to testify to this effect. The admissibility of this testimony is the chief question raised on this appeal.

We are of opinion that the testimony was admissible. The policy provides that "all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties." Where the policy contains such a clause, the insurer, to avoid the policy, must prove fraud on the part of insured in the making of the statements (Livingood v. N. Y. Life Ins. Co., 287 Pa. 128; Kuhns v. N. Y. Life Ins. Co., 297 Pa. 418; Lilly v. Metropolitan Life Ins. Co., 318 Pa. 248) ; the insurer must show not only that the answers were false in fact but also that insured knew they were false when he made them: Lilly v. Metropolitan Life Ins. Co., supra. This could not possibly be true if the answers were not made by insured at all but were supplied later by someone else. The purport of the testimony objected to was that insured was totally unaware of the statements on which defendant now relies. Plainly she could not have been aware

of the falsity of the statements if she was unaware of their very existence. The testimony was therefore clearly relevant for the purpose of negativing fraudulent misstatement (see Suravitz v. Prudential Ins. Co., 244 Pa. 582; Skruch v. Metropolitan Life Ins. Co., 284 Pa. 299; Campdon v. Continental Assurance Co., 305 Pa. 253), and its admission was proper.

Defendant relies upon Rinker v. Ætna Life Ins. Co., 214 Pa. 608; Koppleman v. Commercial Cas. Co., 302 Pa. 106, and Applebaum v. Empire State Life Assurance Society, 311 Pa. 221, in which evidence that insured made truthful answers but that untruthful answers were inserted by the agent or examining physician before insured signed was held to be inadmissible. Under the terms of the contracts there involved, however, the answers were warranties; such being the case, the mere falsity of the statements avoided the policies, and knowledge of their falsity on the part of insured was immaterial: Dinan v. Supreme Council, 201 Pa. 363; see Suravitz v. Prudential Ins. Co., supra. The answers in the instant case were not warranties, but statements which would avoid the policy only if they were made with knowledge of their falsity. If, as the testimony indicated, they were not even made by insured, who was hence not aware of their existence, she could not have known that they were false.

Benzinger v. Prudential Ins. Co., 317 Pa. 561, is urged upon us by defendant as controlling the instant case. There the application, a copy of which was attached to the policy as part of the contract, contained the following provision: "I further agree that . . . unless the full first premium is paid by me at the time of making this application, the policy shall not take effect until issued by the company and received by me and the full first premium thereon is paid, while my health, habits and occupation are the same as described in this application." The jury, while it returned a general verdict for plaintiff, made a special finding that at the time the first premium was paid and the policy issued by the company the appli-

cant's health was substantially worse than as described in the application. It was contended that the lower court erred in entering judgment for defendant in this state of the case, in view of the fact that plaintiff had produced testimony that insured signed the application in blank and that the questions in it were not asked of insured by the examining physician nor answered by him. In rejecting this contention and holding that the testimony was irrelevant, we said: "The provision that the policy should not take effect unless the health of the insured at the date of the issuance of the policy and payment of the first premium was as described in the application was neither a warranty nor a representation but a condition precedent; the inquiry is not whether the insured knew the state of his health at that time and fraudulently concealed it from the insurer, but simply whether, in fact, he was then in the same state of health as described in the application. So far as concerns this clause, the portions of the application describing his health are integral parts of it, and in this character, as distinguished from their character as representations, they are terms of the contract. When the insured signed in blank the paper headed 'declarations made to the medical examiner,' he was, to say the least, put on notice that negative answers to the questions here involved would have to be filled in, as they were. . . . Having accepted the policy as written, he was bound by its terms, and since the finding of the jury establishes that there was a violation of the express and fundamental condition that the policy should not take effect unless his health at the date of its issuance was as described in the application, there can be no recovery upon it." Since the statements appearing in the application as attached to the policy were used not as representations but as part of the contract itself, no intent to defraud was there involved. It is obvious, therefore, that the case is not controlling here. As we have previously pointed out, fraud was an essential element of the insurer's defense in the instant case, and the evidence that

the questions in the application were not asked of or answered by insured was relevant to that issue and accordingly admissible. In Swan v. Watertown Fire Ins. Co., 96 Pa. 37, relied upon by defendant, the policy was likewise avoided by a breach of its own terms, not by fraudulent representations or breach of warranty.

Defendant contends that the evidence offered should have been excluded for the reason that insured, having accepted the policy and retained it for more than a year, was "bound by its terms." This contention cannot be supported, for it is clear that the mere fact that insured accepted and retained the policy, without evidence that she read it, would not establish the fraudulent intent that constituted a necessary feature of the insurer's defense in the instant case. Defendant also argues that plaintiff was estopped to introduce this evidence because the application recited that insured had read the answers, that they were written as made by her, and that they were full, complete and true. However, it does not appear that the evidence was objected to on this ground or that the question was raised in any other manner in the trial court, and for this reason we do not pass upon it.

It is claimed by defendant that the trial judge erred in excluding its evidence that insured, on her admission to the hospital shortly before she died, stated to one of the physicians that she had had chronic ear disease since infancy and that she had undergone operations for mastoid, sinus and nasal conditions. This evidence was offered for the sole purpose of showing that insured was aware of the falsity of the statements in the application. It is conceded by defendant, however, that the trial judge submitted the case to the jury on "the sole and simple issue as to whether or not the answers appearing on the application offered in evidence appeared upon the application at the time Kate Stein signed it." In so doing, he eliminated from the jury's consideration the question whether insured knew the answers were false. Since this was the

only issue upon which the evidence was offered, it is apparent that defendant was not harmed by its exclusion.

Defendant argues, finally, that the verdict was "so clearly against the weight of the evidence that it was an abuse of discretion to refuse a new trial." It is true that evidence of the sort here offered by plaintiff is susceptible of great abuse and should be subjected to the closest scrutiny by the trial court, whose duty it is to grant a new trial without hesitation whenever satisfied that justice has not been done. But where, as here, the court in banc, after hearing the views of the trial judge, who saw and heard the witnesses and is therefore better able than we to judge their credibility, is of opinion that a new trial should be refused, we will ordinarily affirm its holding. We see no reason to depart from that rule in the instant case.

Judgment affirmed.

Mr. Justice SCHAFFER dissents.