Horsfield, Exrx., Appellant, *v.* Metropolitan Life Insurance Company.

Argued December 9, 1936.

460 

 Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Nathan Agran,* with him *Herman P. Abramson* and *Max E. Cohen,* for appellant.

*Owen B. Rhoads,* with him *Carroll Wetzel, Dechert, Smith & Clark* and *Harry Cole Bates,* for appellee.

OPINION BY KELLER, P. J., January 29, 1937:

This was an action, brought originally by Mary Horsfield, individually, on April 2, 1935, against Metropolitan Life Insurance Company upon an industrial policy of life insurance issued October 30, 1933, to her husband, Harry Horsfield, who died on June 15, 1934. The policy by its terms, was payable to the executor or administrator of the insured, unless the company availed itself of the 'facility of payment' clause and made payment to the wife, or some other person appearing to said company to be equitably entitled to the money. As widow, Mary Horsfield had no valid, enforceable claim against the company on the policy: *Williard v. Prudential Ins. Co.,* 276 Pa. 427, 120 A. 461.

The defendant insurance company in its affidavit of defense set up (1) the want of any right of action on the part of the plaintiff upon the policy; and (2) by way of defense on the merits, pleaded the condition in the policy which gave the company the right to de-

clare the policy void, and limited its liability in such event to the return of premiums paid on the policy,[1] if, inter alia, the insured "is not in sound health on the date hereof, or ...... has, within two years before the date hereof, been attended by a physician for any serious disease or complaint, or, before said date, has had any pulmonary disease, or chronic bronchitis or cancer, or disease of the heart, liver or kidneys, unless such ...... medical attention or previous disease is specifically recited in the 'Space for Endorsements' on page 4 in a waiver signed by the Secretary"; and averred that the insured, within two years prior to the date of the policy contract, to wit, October 1931 and April 1932 had been attended by a physician or physicians for a serious disease, namely aortic regurgitation, due to rheumatic heart and chronic valvular endocarditis, and had, and was suffering from, disease of the heart; and that such diseases and medical attendance had not been specifically recited in the 'Space for Endorsements' on page four of the policy, in a waiver signed by the secretary; and that the insured was not in sound health on the date of the policy, but suffered from said diseases continuously from a time prior to the date of said policy to the time of his death. The defendant, in its affidavit of defense, also denied that the plaintiff had furnished proofs of death entitling her to recover under the policy and averred that the proofs of death furnished by the plaintiff to defendant stated that the insured, within two years prior to the date of the policy had been attended by physicians for the serious diseases above set forth and was suffering at that time and prior thereto from disease of the heart.

On April 21, 1936, the day before the case was called for trial before Judge GLASS, without a jury, the defendant, very fairly, it may be said, entered into a

---

[1] "Except in case of fraud, in which case all premiums will be forfeited to the company."

formal stipulation with the plaintiff that the name of the plaintiff in the action, wherever it appeared of record "in the praecipe, summons, statement of claim, docket and elsewhere," should be amended to read, "Mary E. Horsfield, as Executrix of the Estate of Harry Horsfield, Deceased," letters testamentary having been issued to her by the Register of Wills of Philadelphia County on April 9, 1936, over a year after suit was brought. Had the amendment not been allowed, under the ruling in *Williard v. Prudential Ins. Co.,* supra, the plaintiff could not have recovered, and would have had to bring another action in her capacity as executrix.

We need not recite the testimony produced at the trial. Under the principles so clearly laid down by the Supreme Court in *Evans v. Penn Mutual Life Ins. Co.,* 322 Pa. 547, 186 A. 133, it would have been sufficient to take the case to the jury, if a jury trial had not been waived by the parties; and it was sufficient to support a finding for the defendant, where, as here, the trial judge resolved the questions of fact against the plaintiff. The findings of a trial judge, sitting without a jury, have the force and effect of the verdict of a jury, and, when sustained by the court in banc, will not be set aside by an appellate court, if there is competent evidence to support them.

The appellant contends that judgment should have been entered in her favor on two grounds, which we will consider in order.

(1) The first ground, on which she rests her right to judgment, is that the defendant, in its affidavit of defense, did not plead an offer to return, or tender of, the premiums paid by the insured, to wit, $11.90, in electing to declare the policy void for the reasons set forth as above. But the policy does not provide that the repayment of the premiums paid by the insured, or an offer to return, or a tender of, said premiums,

shall be a condition precedent to the right to declare the policy void for the reasons above stated. The language is, "the *liability* of the company in case of any such declaration [that the policy is void for the reasons above] or *in the case of any claim under this policy, shall be limited* to the return of premiums paid on the policy, except in case of fraud, in which case all premiums will be forfeited to the company." If the policy is declared void and cancelled by the company in the lifetime of the insured it would seem fair and reasonable that the return of the premiums paid should be made, or at least tendered, concurrently with the declaration of cancellation, even though the policy makes no specific provision on the subject; for the facts would bring the case within the line of reasoning frequently applied to the attempted cancellation of fire insurance policies by an insurance company before a loss by fire, under policies then in use. But we need not decide that question, for it is not now before us. The language used in the policy, applicable as it is to the act of the company declaring a policy void *after the death of the insured* because of breach of condition as to his health and attendance by physicians for serious disease, fixes the *liability* of the company in a *claim or action* against it on the policy and limits the *amount recoverable in such case* to the amount of premiums paid on the policy, except in case of fraud, when no recovery at all is permitted. This effectually rebuts the contention that the repayment or tender of the premiums paid is a condition precedent to the company's right to present such a defense. If the company's cancellation of the policy is upheld, the plaintiff's right to a verdict for the amount of premiums paid, depends on whether the evidence sustains a finding of fraud on the part of the insured, or merely a breach of condition as to the insured's sound health, etc. without any fraud on his part. The language of the policy

should not be wrested from its plain meaning, even against an insurance company, so as to imply a condition that was not prescribed in the policy. The casual expression in the opinion of the Supreme Court in *Home Mutual Life Assn. v. Riel*, 1 Monaghan 615, 622, 17 A. 36,[2] does not require us so to, hold; certainly not, when consideration is given to the fact that the defendant company at the trial recognized its liability for a return of the premiums and moved to amend its affidavit of defense so as to make formal admission of and offer to return the same, and was prevented from doing so only by the objection of the plaintiff to the amendment and the statement that she would plead surprise and ask for a continuance of the case.

(2) Appellant's second contention is that the insurance company was estopped from setting up its defense in this action by the Act of July 19, 1935, P. L. 1319, which adds section 411A to the Insurance Act of May 17, 1921, P. L. 682.[3]

---

[2] The defense in that case was that the policy never went into effect because the insured had not signed the application for insurance. Referring to this, the court said: "The company received the premiums and has retained them up to this time. If, during all these years, the company was not bound for such a cause as this, there should have been a return, or at least an offer to return the premiums."

[3] *"Effect of Medical Examination and Waiver Thereof.*—In any case where the medical examiner, or physician acting as such, or the agent of the insurer recording the answers of the applicant where a medical examination is waived, of any insurance company doing business in this State, shall issue a certificate of health, or declare, the applicant a fit subject for insurance, or so report to the company or its agent under the rules and regulations of the company, it shall thereby be estopped from setting up in defense of the action on the policy or certificate issued to the insured, that the insured was not in the condition of health required by the policy or certificate or by the company issuing the same at the time of the medical examination, or the recording of the answers of the applicant where a medical examination is waived, unless the same was procured by or through the

No reference was made to this statute by plaintiff's counsel on the trial, nor was it brought to the attention of the court below or of opposing counsel until the argument of the rule for judgment non obstante veredicto. If it was not an afterthought, plaintiff's counsel, in fairness to the court, should have made specific reference to the Act of 1935 as ground for their request for a finding in her favor: *Morrett v. Fire Assn. of Phila.*, 265 Pa. 9, 108 A. 171; *Grange Natl. Bank v. Collman,* 306 Pa. 200, 159 A. 26. But as the point was specifically raised at the argument of the rule in the court below, we will consider it. As ground for the application of the statute, the plaintiff relies on her offer—as cumulative evidence of the insured's sound health—of the original application for the insurance, which was not affixed to the policy, but which contained the verification or certificate of the agent of the company, who secured the application, that the applicant was apparently in good health and physical condition at the time.

We need not here decide whether the Act of 1935, supra, applies to policies of life insurance issued before its effective date, where the insured is then living, and is, to that extent, retrospective in effect, or is wholly prospective and limited to policies of insurance issued after its effective date. See reference in *Kessler v. National Life & Accident Ins. Co.*, 124 Pa. Superior Ct. 319, 188 A. 377. For we are satisfied that even if it is to some extent retrospective and applicable to policies of insurance issued before it became effective, where the insured was then living, it cannot be applied to a previously issued policy whose status was fixed by the death of the insured before the passage and approval of the act. While the Act, to some extent, affects procedure, it is not limited in its operation and

fraud, deceit, or misrepresentation of or on behalf of the insured."

effect to procedural matters, and, if applied to the present case, would deprive the defendant company of a valid and existing defense on the merits pleaded to a pending action on a policy issued before its passage, the status of which and the corresponding rights of the parties were fixed by the death of the insured over thirteen months before the act was passed. This cannot constitutionally be done: *Beaver County B. & L. Assn. v. Winowich*, 323 Pa. 483, 187 A. 921. The insured, in this case, died on June 15, 1934. Action was brought on the policy on April 2, 1935. Defendant's affidavit of defense was filed on May 23, 1935. It set up a defense which was then valid and legal, and effectual to prevent a recovery under the policy, if established to the satisfaction of the trier of fact. To deprive the company of that defense and require it to pay the face of the policy by the subsequent enactment of a statute, which provides that the report or certificate of the soliciting agent shall operate as an estoppel against the company,—an effect not legally attributable to it, or even contemplated, when the policy became a death claim—, would not be a mere matter of procedure, but would affect the substantive law of the case and divest the defendant company of its legal rights.

We hold that the Act of July 19, 1935 cannot legally be applied to an action upon a policy of life insurance where the insured died before the effective date of the statute.

(3) As ground for a new trial, plaintiff assigns as error the admission in evidence, on behalf of the defendant, of the proofs of death furnished the insurance company pursuant to the provisions of the policy. She contends that as these proofs were furnished by her individually they cannot be offered as evidence against her, in her capacity as executrix, after the amendment of the action. Her contention is without merit.

Before bringing suit, Mrs. Horsfield submitted certain proofs of death to the defendant company. She then brought this action and in her statement of claim averred in paragraph seven: "Plaintiff further avers that she has furnished defendant with good and sufficient, due and satisfactory proofs of the facts hereinbefore set forth upon blanks furnished by the defendant company." By stipulation of counsel, filed of record the day before the trial, it was agreed that the name of the plaintiff, wherever it appeared of record in the praecipe, summons, statement of claim, docket and elsewhere should be amended to read, Mary E. Horsfield, as Executrix of the Estate of Harry Horsfield, Deceased. It is clear that following this stipulation, wherever 'plaintiff' appears in the statement of claim, affidavit of defense and other papers of the case, it shall thereafter be taken to mean, the plaintiff as amended by said stipulation, to wit, Mary E. Horsfield, executrix of the Estate of Harry Horsfield, deceased. By this stipulation the plaintiff, in the action as thus amended, adopted the averments and acts of the original plaintiff, including the furnishing of proofs of death Otherwise she failed to comply with the provisions of the policy in that regard and was not entitled to recover.

The plaintiff could not accept, without objection, the statement of the court on the trial made just before she rested, which relieved her of producing evidence essential to her case: "It is admitted that the company issued this policy, that the insured died, and that proofs of death were furnished"—meaning the proofs furnished by Mary E. Horsfield, prior to her taking out letters testamentary—and then repudiate the proofs when offered by the defendant in support of its case, as averred in its affidavit of defense. She cannot adopt the proofs for her own purposes in order to show compliance with the provisions of the policy

and object to the defendant's use of them as relevant evidence in its behalf: 2 Wigmore on Evidence, (2d Ed.) sec. 1073 (4) and note 9, p. 570. She was not bound by the contents of the proofs and was permitted to contradict them by other evidence, but having adopted and used them for the purpose of showing compliance with the conditions of the policy, she could not be allowed to repudiate them when offered by the defendant. She cannot blow hot and cold.

The case of *Allegheny Trust Co. v. State Life Ins. Co.*, 110 Pa. Superior Ct. 37, 167 A. 251, relied on by appellant is not at all in point. There, proofs of death furnished the defendant insurance company by the Allegheny Trust Co. administrator of C, in a claim upon a policy insuring the life of C, were held properly excluded when offered in evidence on behalf of the insurance company as an admission against interest of the plaintiff in an action brought by Allegheny Trust Co., administrator of L, upon a totally different policy, insuring the life of L. We said (p. 40) : "The fact that the same corporation happened to be administrator in both estates did not have the effect of making a statement by it in the proof of death of the one intestate operate as an admission of the responsibility of the other intestate for that death, in a suit on a different policy of insurance ...... It was acting in two different representative capacities—as much so as if there had been two different administrators."

The assignments are overruled.

Judgment should have been entered in the court below in favor of the plaintiff, as executrix of the Estate of Harry Horsfield deceased, and against the defendant for $11.90, the amount of premiums paid by the insured, with interest from April 21, 1936.

The judgment will be modified accordingly.